_____ FILED          _____ ENTERED
_____ LODGED         _____ RECEIVED

JAN 24 2018      RE

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY_____DEPUTY

*Issued via US Postal Service*

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA Ex. Rel.
JEREMY CONKLIN, D.O;

             Plaintiff

      vs.

UW MEDICINE, a public health system; UW MEDICINE/NW, a Washington public benefit corporation; UNIVERSITY OF WASHINGTON MEDICAL CENTER, a public hospital; UNIVERSITY OF WASHINGTON SCHOOL OF MEDICINE, a public school of medicine; PAUL RAMSEY, M.D., individually; LESTER PERMUT, M.D., individually; SEATTLE CHILDREN'S HOSPITAL, a Washington non-profit corporation; CHILDREN'S UNIVERSITY MEDICAL GROUP, a Washington non-profit group; MARY BRIDGE CHILDREN'S FOUNDATION, a Washington public benefit corporation; THORACIC SURGERY DIRECTORS ASSOCIATION, a North Carolina non-profit corporation; and ACCREDITATION COUNCIL FOR GRADUATE MEDICAL EDUCATION, an Illinois non-profit corporation;

             Defendants

NO. 18-CV-00109 MJP

**QUI TAM COMPLAINT**

**FILED UNDER SEAL**

*JURY DEMAND*

QUI TAM COMPLAINT– 1

HKM EMPLOYMENT ATTORNEYS LLP
600 Stewart Street, Suite 901
Seattle, Washington 98101
(206) 838-2504

**INTRODUCTION**

Dr. Jeremy Conklin, *qui tam,* on behalf of the United States of America ("Plaintiff"), by and through his attorneys of record, HKM Employment Attorneys, LLP, requests damages, attorney's fees, and costs under the Federal False Claims Act ("FCA") for Medicare fraud against the Defendants. 18 U.S.C §§286-287; 31 U.S.C. §§3729-3733.

This claim appears to be a matter of first impression. However, the discrimination against osteopathic physicians in America has been ongoing for years. Only two states have laws prohibiting the discrimination of osteopathic physicians in training and hiring. Washington is one of them. Dr. Conklin applied for a fellowship and was rejected based solely on his osteopathic board certification, which violates the Washington statute. The rejection of his application and violation of the law that occurred when he was rejected are the impetus of this lawsuit.

This claim originates from RCW 70.41.235, which was enacted in 1995 to prohibit discrimination of osteopathic physicians, and preference of medical doctors, based solely on board certification. The Defendants named herein have knowingly and willingly discriminated against and/or conspired to discriminate against osteopathic physicians for 23 years, violating RCW 70.41.235, likely because their accreditation for medical education requires them to. Rather than risk their accreditation, Defendants chose, in reckless disregard, to ignore the statute, which was supported in the legislature by one of their former colleagues, according to legislative history. As a result of their intentional violations of the law, Defendants have either directly, or through conspiracy, fraudulently applied for and received funding from Medicare to assist in/pay for the discriminatory practices they knowingly were engaged in. 31 U.S.C. §§3729(a)(1)(A), (B), and (C). These acts are the basis of Plaintiff's claim.

Plaintiff has personal knowledge and/or access to the public records that set forth the facts alleged herein. Plaintiff has filed a companion lawsuit in this Court for claims involving RCW 70.41.235 for discrimination, federal and state anti-trust violations, civil conspiracy, and other state claims against the Defendants named herein, contemporaneous with the filing of this Complaint. Because this Complaint is filed under seal and subject to The United States Department of Justice ("DOJ") review, Plaintiff has filed this claim as a separate action. If DOJ does not prosecute this Complaint, Plaintiff will move to consolidate the two cases.

QUI TAM COMPLAINT– 2

1       Additionally, Plaintiff intends to amend this Complaint to add state false claims act

2   claims upon expiration of the 60-days this lawsuit is to be under seal or when DOJ decides

3   whether it will prosecute this case, whichever is earlier. Because the state claims will be

4   asserted on behalf of the State of Washington ("the State") and the State Attorney General's

5   Office has communicated as counsel for some of the Defendants herein, Plaintiff did not

6   want to inform the State of the claim during the DOJ investigation and risk the
confidentiality associated with the FCA. Therefore, Plaintiff reserves the right to amend his

7   Complaint to add state false claims act claims once this case is no longer filed under seal.

8                                        **PARTIES**

    1.   The United States of America ("U.S.) is a sovereign nation.

9       2.   Jeremy Conklin, D.O. is a resident of the state of Texas. He is an osteopathic

10   physician and a 2017 applicant to the University of Washington School of Medicine's
("UWSOM's") congenital cardiothoracic surgery (also known as pediatric cardiac surgery

11   and hereafter referred to as "CCS") fellowship (hereafter, "the fellowship"), which is a paid

12   position supported by GME funding from Medicare pursuant to the Social Security Act of

13   1965 ("SSA"). Dr. Conklin, also referred to herein as "Plaintiff", brings this claim on behalf
of the U.S.

14       3.   Defendant UW Medicine ("UWMed") is a public health system located in Seattle.

15   UWMed owns and operates Defendant University of Washington Medical Center

16   ("UWMC"), a public hospital located in Seattle that provides training to GME residents and
fellows, including the fellowship at issue in this case. UWMed also owns and/or operates

17   the following hospitals, clinics, and groups: Harborview Medical Center, Northwest

18   Hospital and Medical Center, Valley Medical Center, UW neighborhood Clinics, UW

19   Physicians, and Airlift Northwest.

20       4.   Defendant UW Medicine/Northwest is a Washington public benefit corporation
located in Seattle and an affiliated entity of Defendant UWMed.

21       5.   Defendant UWSOM is a public medical school with its main campus located in

22   Seattle. UWSOM offers the fellowship that is at issue in this case.

23       6.   Defendant Paul G. Ramsey, M.D. is an individual residing in the state of

24   Washington. Dr. Ramsey is the Chief Executive Officer of UWMed, Executive Vice-
President for Medical Affairs and Dean of UWSOM.

25       7.   Dr. Ramsey knowingly and willingly participated in the discrimination and knowing

26

QUI TAM COMPLAINT– 3

HKM EMPLOYMENT ATTORNEYS LLP
600 Stewart Street, Suite 901
Seattle, Washington 98101
(206) 838-2504

1  and willful violation of RCW 70.41.235, which is the impetus of this lawsuit leading to the

2  False Claims Act violations alleged herein.

3      8.   Defendant Lester C. Permut, M.D. is an individual residing in the state of

Washington. Dr. Permut is the Program Director for the fellowship that is the subject of the

4  claims herein.

5      9.   Dr. Permut knowingly and willingly participated in the discrimination and knowing

6  and willful violation of RCW 70.41.235, which is the impetus of this lawsuit leading to the

False Claims Act violations alleged herein.

7      10.   Defendant SCH is a Washington non-profit corporation located in Seattle.

8  UWSOM offers the fellowship that is the subject of the claims herein and for which Plaintiff

9  applied in 2017 at SCH. UWSOM and SCH are affiliated with one another, but are not

commonly owned.

10

    11.   Defendant Children's University Medical Group is a non-profit pediatric group

11  practice established to support the academic, research, and clinical missions of its

12  corporate members, UWSOM and SCH.

13      12.   Mary Bridge Children's Foundation ("MBCF") is a Washington Public Benefit

Corporation located in Tacoma. The fellowship includes training at MBCF. UWSOM and

14  MBCF are affiliated with one another, but are not commonly owned.

15      13.   The Defendants named in paragraphs 2-12 of this Complaint are referred to

16  collectively herein as "UW" for no other purpose than ease and efficiency. If referred to

17  individually, each Defendant will be referred to specifically and separately.

    14.   The American Board of Thoracic Surgery, Inc. ("ABTS") is an Illinois non-profit

18  corporation. ABTS board certifies medical doctors who specialize in thoracic surgery. ABTS

19  operates from a main office in Chicago, Illinois. The ABTS is a named Defendant in the

20  companion lawsuit filed by Plaintiff.

21      15.   Defendant Thoracic Surgery Directors Association ("TSDA") is a North Carolina

non-profit corporation. The TSDA operates the match program utilized by UWSOM and

22  other medical schools and hospitals that are accredited by the Accreditation Council for

23  Graduate Medical Education ("ACGME"). The TSDA match requires ABTS board

24  certification in thoracic surgery for fellowships in CCS, including the fellowship. TSDA

operates from a main office in Chicago, Illinois, which it shares with its affiliated entity

25  ABTS.

26      16.   The ACGME is an Illinois non-profit corporation. The AGCME sets requirements

QUI TAM COMPLAINT– 4

HKM EMPLOYMENT ATTORNEYS LLP
600 Stewart Street, Suite 901
Seattle, Washington  98101
(206) 838-2504

1 for and accredits the fellowship that is the subject of this lawsuit.

2   17.  UWSOM must comply with ACGME accreditation requirements to remain
3 accredited.

4   18.  The ACGME accreditation requirements are in conflict with RCW 70.41.235, the
Washington statute that is the impetus of this lawsuit. As a result, UW chose to violate
5 Washington law rather than risk losing the UW's ACGME accreditation.

6 **VENUE AND JURISDICTION**

7   19.  This Court has jurisdiction pursuant to federal question jurisdiction as authorized
under 28 U.S.C. §1331 for Plaintiff's claims against Defendants for violations of the False
8 Claims Act, 31 U.S.C. §§3729—3733, pursuant to 31 U.S.C. §3732(a).

9   20.  This Court has supplemental jurisdiction of Plaintiff's state law claims asserted in
10 the companion complaint and any state false claims that may be asserted in the future, as
discussed below, pursuant to 28 U.S.C. §1367 and 31 U.S.C. §3732(b).

11   21.  Venue is proper because the fellowship is located in Seattle and each of the
12 Defendants conducts business in Seattle, Washington.

13   22.  Plaintiff provided a Notice of Claim to UWMed identifying multiple claims as a
prerequisite to filing this lawsuit, which UW rejected. More than 60 days have elapsed since
14 UW received Plaintiff's Notice of Claim.

15   23.  Plaintiff also filed a Complaint with the Federal Trade Commission regarding the
16 allegations set forth herein.

17   24.  Notice and a copy of this claim will be provided to the United States Department
of Justice pursuant to the False Claims Act, 31 U.S.C. § 3729-3733.

18 **FACTS**

19   25.  There are two different categories of physicians who may practice medicine in the
20 United States; allopathic physicians, referred to as medical doctors ("MDs"), and
osteopathic physicians ("DOs"). Both are fully licensed physicians, trained in diagnosing
21 and treating illnesses and disorders, and in providing preventive care.

22   26.  Physicians apply for privileges to practice medicine at hospitals, which require
23 them to be licensed in the state they are practicing and be board certified by a recognized
professional organization in the field of medicine they practice.
24
25   27.  Physicians in Graduate Medical Education ("GME") training become board
certified by completing residencies and fellowships in their field of medicine.  Accredited
26 GME training programs are funded by Medicare.

QUI TAM COMPLAINT– 5

HKM EMPLOYMENT ATTORNEYS LLP
600 Stewart Street, Suite 901
Seattle, Washington  98101
(206) 838-2504

28.   There are two organizations in the United States that accredit GME training; the ACGME, which accredits MD programs, and the American Osteopathic Association ("AOA"), which accredits DO programs.

29.   UW receives Medicare funding for its GME training and is the largest GME sponsor in the northwestern United States, including Washington, Wyoming, Alaska, Montana, and Idaho. UW trains approximately 1350 residents and fellows each year. It has 25 residency programs and 76 fellowship programs, and ranks 7th nationally in number of programs and 8th nationally in number of trainees.

30.   There are twelve (12) ACGME accredited CCS fellowships in the United States that provide GME training in CCS, one of which is UW at SCH and MBCF, which is overseen by Dr. Permut and Dr. Ramsey.

31.   The ACGME has established eligibility criteria for applicants to enter one of the twelve accredited CCS fellowship programs, including the UW fellowship.

32.   To apply for one of the twelve accredited CCS fellowship programs, including the fellowship, applicants must apply through the TSDA match program.

33.   The TSDA has established its own eligibility criteria for participation in its match program, which is stricter than the ACGME requirements and includes board eligibility and/or certification by the ABTS.

34.   The ABTS is the only organization in the United States that provides board certification and access to ACGME accredited CCS training.

35.   DOs who completed AOA accredited training cannot be board certified by the ABTS because it only board certifies ACGME accredited training.

36.   The ACGME does not offer accreditation to DOs in CCS.

37.   Because ABTS board eligibility or certification is required by the TSDA match program and the ABTS does not board certify DOs with AOA accredited training, DOs with AOA accredited training are unable to become congenital cardiothoracic surgeons.

38.   Plaintiff has the following educational degrees: B.S. in Biology, Masters in Public Health, Masters of Business Administration, and Doctor of Osteopathic Medicine.

39.   Plaintiff honorably served in the Army and Air Force as a Medical Specialist and Medical Officer practicing medicine and teaching courses. Plaintiff is entitled to veteran's preference, when applicable, for his military service.

40.   Plaintiff obtained his medical license in Pennsylvania in 2006, which is current. He

HKM EMPLOYMENT ATTORNEYS LLP
600 Stewart Street, Suite 901
Seattle, Washington  98101
(206) 838-2504

1   is also licensed in two other states and has applied for a Washington license through the

2   Interstate Medical Licensure Compact.

3   41.  Plaintiff is board certified by the American Osteopathic Board of Surgery ("AOBS" in general surgery, critical care, and cardiothoracic surgery. He is a Fellow of the American

4   College of Osteopathic Surgeons and a member of the AOA, the American College of

5   Surgeons, and the Society of Thoracic Surgeons.

6   42.  The AOBS board certification in cardiothoracic surgery is the DO equivalent to the ABTS board certification for MDs.

7   43.  The TSDA match program does not recognize the AOBS board certification in

8   cardiothoracic surgery as equivalent to ABTS board certification in cardiothoracic surgery.

9   Therefore, applicants who are equivalently trained and board certified by the AOBS are not

10  eligible for the TSDA match program.

11  44.  Plaintiff has completed residency/fellowships in general surgery and surgical critical care/trauma, which are AOA accredited, and in cardiothoracic surgery, which is

12  ACGME accredited.

13  45.  Plaintiff was a CCS fellow in an unaccredited training program at the University of

14  Texas ("UT") Southwestern Children's Medical Center, a top-rated hospital in the United States, and ranked higher than UW, from July 2016 to August 2017. He did not complete

15  the fellowship due to no fault of his own; the program terminated upon the departure of the

16  two training physicians. UT has agreed to pay for a replacement fellowship due to the

17  program's sudden unexpected termination.

18  46.  Plaintiff applied for the fellowship through the TSDA match program in 2017. He had also applied in 2015 and 2016. He was not matched with a position each time he

19  applied.

20  47.  UW rejected Plaintiff's 2017 application because he did not meet the TSDA

21  eligibility requirements because he was not ABTS board eligible or certified (i.e. because he was a DO who completed an AOA accredited general surgery residency and not an MD who

22  completed ACGME accredited training).

23  48.  Plaintiff is board certified in the osteopathic equivalent to the ABTS board

24  certification required by the TSDA.

25  49.  In 2017, Plaintiff attempted to obtain a waiver from the ABTS for board eligibility/certification since he holds the equivalent AOBS board certification. ABTS denied

26  Plaintiff's request for a waiver.

QUI TAM COMPLAINT– 7

50.  Plaintiff also filed an appeal with the TSDA in 2017.  The TSDA has not responded to Plaintiff's appeal.

51.  Upon rejection, Plaintiff inquired with UW as to the reason for his rejection. The UW responded with only one reason: Plaintiff is ineligible because he is not ABTS board eligible or certified.

52.  After his rejection but before the match took place, Plaintiff, through his attorney, filed a complaint with UW and sought reconsideration of his application. UW, through the Attorney General's Office, denied his request for reconsideration.

53.  Plaintiff is eligible and qualified for the fellowship other than the fact that he is not ABTS board certified.

54.  UW rejected Plaintiff for the fellowship even though he was equivalently board certified, entitled to veteran's preference, and his GME training would have been at no cost to UW.

55.  UW violated RCW 70.41.235 in rejecting Plaintiff based solely on his board certification.

56.  UW receives Medicare funding for its ACGME accredited GME training programs, including the fellowship.

57.  The purpose of the Medicare funding for GME is to support the training of both MDs and DOs because the United States has a shortage of physicians. Medicare funding absorbs the cost of residents and fellows at teaching hospitals to encourage the training of physicians in America.

## CLAIM

58.  Plaintiff realleges the facts set forth in paragraphs 1-57 of his Complaint as though fully set forth herein.

59.  Plaintiff brings this action as a "relater", or *qui tam,* pursuant to 31 U.S.C §§3729-3733.

60.  UW receives funding from Medicare for its GME residency and fellowship positions, including the fellowship, pursuant to the Social Security Act of 1965.

61.  The purpose of GME funding by Medicare is to promote the training of all physicians to ensure that the United States has enough physicians to provide care to the American public, particularly seniors. The legislative history states, "Educational activities enhance the quality of care in an institution, and it is intended, until the community undertakes to bear such education costs in some other way, that a part of the net cost of

HKM EMPLOYMENT ATTORNEYS LLP
600 Stewart Street, Suite 901
Seattle, Washington 98101
(206) 838-2504

1   such activities (including stipends of trainees, as well as compensation of teachers and other
2   costs) should be borne to an appropriate extent by the hospital insurance program." House
3   Report, Number 213, 89th Congress, 1st session 32 (1965) and Senate Report, Number
    404, Pt. 1 89th Congress 1 Session 36 (1965).
4       62.   Medicare funding for GME does not distinguish between MDs or DOs. Likewise,
5   Medicare reimbursement treats MDs and DOs as equals.
6       63.   Medicare pays/reimburses DOs who completed AOA accredited training the
    same amount as a similar physician who is an MD and completed ACGME training. If
7   Medicare believed there was a difference in the degrees (DO vs MD) or the training
8   (ACGME vs AOA), Medicare would not reimburse them at the same rate.
9       64.   RCW 70.41.235 precludes public hospitals from discriminating against DOs, in
10  granting privileges and in training and hiring, based on board certification.
11      65.   The purpose of RCW 70.41.235 is to prevent discrimination of DOs and/or the
    preference of MDs over DOs in the training and practice of medicine.
12      66.   UW only trains MDs in its accredited GME physician training program. It does not
13  train DOs.
14      67.   Plaintiff was rejected from the fellowship in violation of Washington law because
    UW only considers applicants with ABTS board eligibility or certification in cardiothoracic
15  surgery for the fellowship and rejects applicants with AOBS board eligibility or certification
16  in cardiothoracic surgery (only MDs and not DOs).
17      68.   UW has violated RCW 70.41.235 by preferring MDs over DOs in the training for
    and practice of medicine.
18      69.   UW's use of the TSDA match program and contract with the TSDA is against
19  public policy, as it violates RCW 70.41.235.
20      70.   Defendants willfully and knowingly discriminate against DOs in violation of RCW
21  70.41.235 by requiring board certification that is only available to MDs and not available to
    DOs, who completed AOA accredited training.
22      71.   The False Claims Act, 31 U.S.C §§3729—3733, prohibits fraudulent claims, which
23  are defined as requests or demands for money presented to the United States.
24      72.   The FCA does not define the term fraud. Fraud is defined by the dictionary as
    wrongful or criminal deception. Its common law definition is a false statement of a material
25  fact whether by words or by conduct, by false or misleading allegations, or by concealment
26  of what should have been disclosed.

QUI TAM COMPLAINT– 9

73. Medicare reimbursement for GME requires an attestation under penalty of perjury that the information submitted is not being used for any unintended purpose, for fraud, or to commit a criminal act.

74. UW uses the Medicare funds to support an improper purpose and its own fraud against the State of Washington – its deliberate discrimination of DOs.

75. UW is committing fraud by using Medicare GME funds to train only the physicians who have completed ACGME accredited training.

76. The ACGME and the TSDA participate in the fraud by failing to recognize DO equivalent board certifications and therefore, requiring UW to discriminate against DOs to remain accredited.

77. Together, all Defendants conspire to discriminate against DOs, which violates Washington law.

78. The discrimination is then wrongfully supported by reimbursement to UW by Medicare for the positions in which DOs have been excluded from training.

79. The discrimination has been ongoing since the 1995 enactment of RCW 70.41.235.

80. UW has accepted GME Medicare funds since its enactment.

81. Therefore, the fraud committed by Defendants and the damages/penalties to the United States are extensive.

82. UW has approximately 1350 residents and fellows in its programs each year. Applying the six year statute of limitations for these claims, that includes funding for 8,100 GME physicians. The average GME funding (direct and indirect) amounts to approximately $200,000 per physician. Therefore, the damages are estimated at $1.62 Billion.[1]

83. Defendants are liable for treble damages totaling $4.86 Billion.

84. Defendants are liable for civil penalties up to $10,000 for each False Claims Act violation. The number of GME students (8100) multiplied by the maximum penalty of $10,000 is $81,000,000.

85. Defendants are also liable for Plaintiff's attorney's fees and costs.

## JURY DEMAND

Pursuant to Fed. R. Civ. Pro. 38(b), Plaintiff demands a jury trial.

---

[1] In November 2017, Plaintiff made a Public Records Act Request to UW to obtain the number of residents and fellows who have applied and/or placed in GME positions. UW has not produced the documents as of the date of the filing of this Complaint. As such, the number of GME physicians and damages are based on information obtained online from UW's website.

QUI TAM COMPLAINT– 10

HKM EMPLOYMENT ATTORNEYS LLP
600 Stewart Street, Suite 901
Seattle, Washington  98101
(206) 838-2504

**PRAYER FOR RELIEF**

Having plead his claim, Plaintiff prays for the following relief:

1. Judgment in favor of the United States in an amount to be proven at trial, currently estimated at $1.62 Billion;

2. An award of treble damages, currently estimated to be $4.86 Billion;

3. Civil penalties up to $10,000 for each violation, currently estimated at the maximum statutory penalty for a total of $81,000,000;;

4. An award of attorney's fees and costs; and

5. Such other relief as available under the statutes and/or

6. the Court deems just and equitable.

DATED THIS 18TH DAY OF JANUARY, 2018

HKM Employment Attorneys, LLP

Kristi Favard, WSBA No. 34419
kfavard@hkm.com

HKM Employment Attorneys, LLP
600 Stewart Street, Suite 901
Seattle, WA 98101
Phone: (206) 838-2504
Facsimile: (206) 260-3055
*Attorneys for Plaintiff*

QUI TAM COMPLAINT– 11